11-8215- CRJ

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| MARTIN B. CARTER | ) |

**CRIMINAL COMPLAINT**

Case No. **11-369-M-01**

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.  On or about February 25, 2010, in the District of Columbia and elsewhere, the defendant did commit the following criminal offense:

> Did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, in a matter within the jurisdiction of the executive branch of the Government of the United States, that being a proceeding before the United States Securities and Exchange Commission, in violation of Title 18 United States Code, § 1001.

I further state that I am <u>Postal Inspector George P. Clark, United States Postal Inspection Service</u>, and that this complaint is based on the following facts:

**See attached Affidavit and made a part hereof:**

George P. Clark, Postal Inspector
U.S. Postal Inspection Service

Sworn to before me and subscribed in my presence in Washington, D.C.

**JUN  7 2011**
Date

The Honorable Alan Kay
United States Magistrate Judge
District of Columbia

11-369-M-01

## AFFIDAVIT IN SUPPORT OF A
## CRIMINAL COMPLAINT AND ARREST WARRANT

MARTIN B. CARTER
DOB:  June 5, 1958
SSN:  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

I, George P. Clark, being duly sworn, hereby depose and state:

### Introduction

1.      This affidavit is submitted in support of a complaint charging MARTIN B. CARTER of 8103 Mizner Lane, Boca Raton, FL with making false statements to the United States Securities and Exchange Commission, in violation of Title 18 U.S.C. §1001.

2.      I am employed as a United States Postal Inspector assigned to the Fraud Team in the Fraud Section of the United States Department of Justice. I have been employed as a Postal Inspector since 2007. While working as a Postal Inspector, I have investigated a multitude of financial crimes, frauds and other crimes that utilize the mail and have received training in the Postal Inspection Service Training Academy and from other law enforcement training seminars in financial crimes, frauds, internet fraud and other similar white-collar crimes. Before joining the Postal Inspection Service, I received a law degree from the Beasley School of Law at Temple University in 2007. Before attending law school, I worked as a paralegal in the Manhattan District Attorney's Office in a White Collar Criminal Investigations group assisting detectives and prosecutors investigate and prosecute cases. I am authorized under law to conduct investigations into violations of USC, Title 18 § 1341, Mail Fraud, Title 18 § 1343, Wire Fraud, Title 18 § 1956 and 1957, Money Laundering, Title 18 § 1001, False Statements, and other similar statutes.

1

3.     From in or about January 2011 to the present, I, along with others from the Department of Justice, have been involved in an investigation into potential obstruction of justice involving an investigation being conducted by the SEC regarding Heart Tronics, Inc., previously known as Signalife, Inc. ("Heart Tronics").

4.     From my participation in this investigation, from interviews conducted by me and by others, from information told to me by other law enforcement officers and reports made by other law enforcement agents, and from my review of other documents and records, including documents obtained from the SEC, I am familiar with the facts and circumstances of this investigation. This affidavit does not contain all of the information developed during the course of the investigation, but only that information which is sufficient to establish probable cause for the issuance of an arrest warrant.

### Individuals and Entities

5.     According to relevant documents, including sworn testimony before the SEC by persons with knowledge, Heart Tronics is a health care device company based in South Carolina with offices in and around Los Angeles. Since in or about 2001, Heart Tronics has purportedly been involved in the manufacturing and sale of an EKG heart monitoring device. Heart Tronics has been a public company since September 2002, following a reverse merger with a public company that resulted in Heart Tronics stock being available for sale to the public. Heart Tronics traded on the American Stock Exchange from in or about 2002 until in or about May 2008, when it was delisted. It presently trades on the OTC Markets.

6.     During the relevant time, CARTER has worked as an electrician in Boca Raton, FL. CARTER became a Chief Technology Officer of Heart Tronics in or about January 2008. Also in or

2

about January 2008, Heart Tronics entered into a consulting agreement with a company owned by CARTER.

### The Underlying Facts

7.      Heart Tronics periodically issued press releases and made SEC filings describing its business operations and finances. Based on my review of these documents, I learned that:

a.      On or about September 24, 2007, Heart Tronics purportedly entered a contract with a company called IT Healthcare in which IT Healthcare agreed to purchase approximately $3.3 million worth of Heart Tronics monitors.

b.      On or about September 25, 2007, Heart Tronics issued a press release announcing $3.3 million in sales orders.

c.      On or about October 4, 2007, Heart Tronics purportedly entered a contract with IT Health Care in which IT Healthcare agreed to purchase an additional $564,000 of Heart Tronics monitors.

d.      On or about October 10, 2007, Heart Tronics issued a press release announcing $551,000 in new sales orders.

e.      On or about February 26, 2008, Heart Tronics issued a press release announcing that manufacturing and delivery of one of its monitors had begun for existing orders.

8.      According to documents that I have reviewed, on or about March 3, 2008, a Heart Tronics executive (defined herein as "Executive") instructed Heart Tronics staff to ship five monitors to IT Health Care, care of a named individual (defined herein as "Recipient") at an address in Loveland, Ohio and with a specified phone number (defined herein as "Recipient's Purported Number").

3

9.      Based on my review of shipping records, between on or about April 3 and on or about April 10, 2008, Heart Tronics shipped approximately fifteen monitors to Recipient at the address in Loveland, Ohio.

10.     Based on my review of relevant documents, including sworn testimony before the SEC by persons with knowledge, Recipient is a friend of CARTER who resides in Loveland, Ohio at the address where the monitors were shipped. Recipient has no affiliation with IT Health Care, nor has he ever done business with Heart Tronics. In or about February 2008, CARTER contacted Recipient to ask him if Recipient would store some boxes at his home as a favor to CARTER. In or about March 2008, CARTER contacted Recipient again to confirm the delivery of boxes to Recipient for storage.

11.     Based on my review of relevant documents, including Recipients' sworn testimony before the SEC, Recipients' Purported Number is registered to CARTER, and Recipient has no knowledge of that number.

12.     Based on my review of relevant documents, including Recipient's sworn testimony before the SEC, CARTER contacted Recipient in or about January 2010 and told Recipient that if Recipient is contacted by the SEC, then CARTER would tell Recipient what to say to the SEC.

### Carter's Testimony Before the SEC

13.     On January 8, 2010, as part of its investigation, the SEC subpoenaed CARTER to produce documents and testify before the SEC. Pursuant to SEC subpoena, CARTER appeared on February 25, 2010 at the SEC's Washington, DC headquarters, and testified under oath.

4

14.     Despite being asked directly about his involvement in the shipping of boxes to Recipient, CARTER failed to disclose that he had arranged with Recipient to have Recipient store the boxes in his home, as follows:

Q.     How did [Recipient] get the units?

A.     I don't know. That wasn't my, that was all done by [Executive]. I had nothing to do with that.

15.     Despite being asked directly about his conversations with Recipient about the boxes Recipient was to receive and store, CARTER failed to disclose that he had spoken with Recipient less than one month before the boxes were delivered to Recipient in order to discuss the storage thereof, as follows:

Q.     Did you have any conversations with [Recipient] about the units he was going to receive?

A.     No, I did not.

Q.     Any why not?

A.     Because that was a deal that [Executive] worked out.

16.     Despite being asked directly about what Recipient was going to do with the units, CARTER failed to disclose that he had specifically requested that Recipient store them in his house until CARTER would come to retrieve them, as follows:

Q.     Do you know what [Recipient] was going to do with the units?

A.     I have no idea.

17.     Despite being asked directly about his conversations with Recipient regarding the SEC investigation, CARTER failed to disclose that he had spoken with Recipient approximately one

5

month before CARTER's testimony and told Recipient that CARTER would tell Recipient what to say to the SEC if contacted, as follows:

> Q.    When was the last time you spoke with [Recipient]?
>
> A.    Six, seven, eight months ago.
>
> Q.    What did you talk about?
>
> A.    Just to see how he was doing, how was the baby.  He just had a new baby.

Based on my interviews with persons of knowledge, Recipient did not have a new baby at the time he spoke with CARTER.

18.    Despite being asked directly about Recipient's Purported Number, CARTER denied that the telephone number was his, and he answered that he had a friend who was an insurance salesman (defined herein as "Insurance Salesman") register the number for Carter, as follows:

> Q.    Mr. Carter, [Recipient's Purported Number] is your telephone number.
>
> A.    That is not my telephone number, no.
>
> Q.    You registered that telephone number.
>
> A.    Yes, I had someone register it.
>
> Q.    Who?
>
> A.    [Insurance Salesman].

Based on my review of relevant documents, including Insurance Saleman's sworn testimony before the SEC, Insurance Salesman has no connection to knowledge of Recipient's Purported Number and never discussed registering any phone number with CARTER.

## Conclusion

19.    Based upon the foregoing facts, my training and experience, and the investigation conducted by myself and others, there is probable cause to believe that CARTER did make materially false, fictitious, and fraudulent statements and representations to the Securities Exchange Commission, an agency within the jurisdiction of the executive branch of the United States Government, in violation of USC, Title 18 § 1001.

**JUN  7 2011**

Sworn to and subscribed before me on this _____ day of June, 2011

George P. Clark
Postal Inspector
United States Postal Inspection Service

The Honorable Alan Kay
United States Magistrate Judge
District of Columbia

7

**FILED**

**JUN - 7 2011**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      )
                              )
        v.                    )      Case No. **11-369-M-01**
                              )
MARTIN B. CARTER              )

### [PROPOSED] ORDER GRANTING MOTION TO SEAL CRIMINAL COMPLAINT

Before this Court is the United States of America's motion for an order sealing the arrest

warrant, complaint, and affidavit filed in the above-captioned case on June __, 2011. The Court

[JUN  7 2011 stamp]

believes the Motion has merit and should be granted.

IT IS THEREFORE ORDERED that the above arrest warrant, complaint, and affidavit be

sealed.

IT IS FURTHER ORDERED that the aforementioned Motion to Seal and this order be

sealed until the arrest of the defendant or further order of this Court.

DATED this _7_ day of June, 2011.

The Honorable Alan Kay
United States Magistrate Judge
District of Columbia

cc:     Andrew H. Warren
        Trial Attorney
        U.S. Department of Justice
        Fraud Section, Criminal Division
        1400 New York Avenue, NW
        Washington, DC 20530
        (202) 305-4002

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. **11-369-M-01** |
| MARTIN B. CARTER | ) | |
| | ) | |
| _Defendant_ | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_    MARTIN B. CARTER

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☑ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

On or about February 25, 2010, in the District of Columbia and elsewhere, Martin B. Carter did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, in a matter within the jurisdiction of the executive branch of the Government of the United States, that being a proceeding before the United States Securities and Exchange Commission, in violation of Title 18 United States Code, § 1001.

Date:  06/07/2011

_____
Issuing officer's signature

City and state:   Washington, DC

_____
Magistrate Judge Alan Kay
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____, and the person was arrested on _(date)_ _____ at _(city and state)_ _____ . |
| Date: _____ |

_____
_Arresting officer's signature_

_____
_Printed name and title_

INVESTIGATE COPY ONLY
ORIGINAL ON FILE WITH
US MARSHALL RM 2nd Fl